UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DIANA GRASTORF,

                Plaintiff,

v.

COMMUNITY BANK, N.A.,

                Defendant.

**DECISION AND ORDER**
19-CV-1627S

---

## I.    Introduction

In this action, Plaintiff Diana Grastorf seeks damages from her former employer, Community Bank, N.A. ("the Bank"),  She alleges violation of her rights under Title VII, the Age Discrimination in Employment Act ("ADEA"), and sex and age discrimination provisions of the New York State Human Rights Law from the Bank's termination of her employment.  Before this Court is the Bank's Motion for Summary Judgment (Docket No. 33[1]).  For the following reasons, Defendant's Motion is granted.

## II.    Background

A. Proceedings to Amended Complaint

Diana Grastorf, a female who is over the age of 40, held the position of branch manager with the Bank until her termination (Docket No. 1).  The Bank moved to dismiss the original Complaint (Docket No. 6), and this Court granted that Motion (Docket No. 11, Decision and Order, Nov. 17, 2020, <u>Grastorf v. Community Bank, N.A.</u>, No. 19CV1627,

---

[1]In support of its Motion, the Bank submits the declarations of two Bank officials (district manager Julie Hall and human resources specialist Valeri Erlandson), with exhibits; its Statement of Material Facts; and Memorandum of Law, Docket No. 33.  The Bank replies with its Reply Memorandum, Docket No. 40.

     In opposition, Plaintiff submits her Statement of Undisputed Facts and Memorandum of Law, Docket No. 39.

2020 WL 6777496), but also granted Plaintiff leave to amend the Complaint, Grastorf, supra, 2020 WL 677496, at *4, 5.  This Court then denied (Docket No. 16, Decision and Order of Mar. 23, 2021, 2021 WL 1100686) Plaintiff's Motion for Reconsideration (Docket No. 12), reasserting leave to amend the Complaint (Docket No. 16, at 4, 5).

      B.  Amended Complaint (Docket No. 17)

Plaintiff filed her Amended Complaint on April 6, 2021 (Docket No. 17).  There, she claims she left the Bank branch to complete customer business that could not be performed there (id. ¶ 12) and that she signed out from work to pick up her child from school (offering to make up the missed time later) (id. ¶ 13).  Plaintiff points to a younger employee, Carrie Beardsley, who would take time from work to pick up her children without sanction by the Bank (id. ¶¶ 15-18).  Plaintiff cites another employee, Jim Knapp, who routinely traveled to Bank's customers without sanction (id. ¶¶ 19, 21).

In June 2019, the Bank fired Plaintiff (id. ¶ 23).  Plaintiff later learned that she was terminated for traveling to customers to complete business and leaving work to pick up her child, despite these practices being acceptable for other employees (id. ¶ 25).  Grastorf alleges upon information and belief that she was terminated because of her gender and her age (id. ¶¶ 26, 27).

The Amended Complaint alleges two Causes of Action; the First Cause of Action asserts violations of Title VII, 42 U.S.C. §§ 2000e, et seq., and New York State Human Rights Law, N.Y. Exec. L. §§ 290, et seq., for sex discrimination in her termination (id. ¶¶ 29-36); the Second of Action alleges violations of the ADEA, 29 U.S.C. § 623, and the New York Human Rights Law in terminating Plaintiff due to her age (id. ¶¶ 38-46).

      C.  The Bank's Motion for Summary Judgment (Docket No. 33)

The Bank answered the Amended Complaint on April 20, 2021 (Docket No. 18).

Reviewing the Statements of Fact submitted here (Docket Nos. 33, 39), Plaintiff's objections are to characterizations that she voluntarily retired rather than being terminated and the scope of her duties prior to her termination (e.g., Docket No. 39, Pl. Statement ¶¶ 1, 3-4).

Plaintiff was employed by the Bank as branch supervisor for the Angelica, New York, branch (Docket No. 33, Def. Statement ¶ 3). The parties dispute the scope of Plaintiff's duties as branch supervisor as to the extent of her work-related travel (compare Docket No. 33, Def. Statement ¶ 4 with Docket No. 39, Pl. Statement ¶ 4). The Bank contends that, as branch supervisor, Grastorf was responsible for ensuring that employee timecards were properly submitted, as well as processing loans and servicing branch customers and supervision of the five branch employees (Docket No. 33, Def. Statement ¶¶ 4, 5). Plaintiff adds that her duties included business development, fostering customer relationships, community involvement, lead development, and small business outreach (Docket No. 39, Pl. Statement ¶ 4), presumably with travel obligations.

Plaintiff denies that she was an hourly, non-exempt employee required to punch in and punch out each day (id. ¶ 6; but cf. Docket No. 33, Def. Statement ¶ 6), although she concedes making time entries (see Docket No. 39, Pl. Statement ¶¶ 10, 13-14). Plaintiff's termination arose from the manner Plaintiff reported leaving work.

In early 2019 Plaintiff's supervisor, district manager Julie Hall, became suspicious that Plaintiff was falsifying her time records (Docket No. 33, Def. Statement ¶ 9). Plaintiff claims that Defendant has a prejudice and animus in concluding Plaintiff falsified her time

3

records (Docket No. 39, Pl. Statement ¶ 9). Both parties observe that time records could only be made in the office (e.g., Docket No. 33, Def. Statement ¶ 14; Docket No. 39, Pl. Statement ¶¶ 13, 14). Plaintiff made several requests to Ms. Hall to adjust her time (Docket No. 33, Def. Statement ¶ 11) which Plaintiff claims was due to being out of the office on business and away from her computer to punch out (Docket No. 39, Pl. Statement ¶¶ 13-14). Management called or attempted to visit the Angelica branch after consumer hours and found no one (including Grastorf) present (Docket No. 33, Def. Statement ¶¶ 10, 15).

Ms. Hall raised her falsification concerns with the Bank's human resources generalist, Valeri Erlandson (id. ¶¶ 16-17). Ms. Erlandson investigated these claims by reviewing Plaintiff's time entries during a sample two-week period (from May 1-16, 2019) (id. ¶¶ 20-21). Ms. Erlandson reviewed surveillance camera footage as well as email and telephone records from that interval to determine if Grastorf's time entries reflected her work (id. ¶¶ 22, 23-24).

The Bank claims, for example, that on May 1, 2019, Plaintiff took three hours and twenty minutes in the middle of the day without punching out and back in (id. ¶¶ 26-28). The Bank contends that Plaintiff was paid for several hours when she was not in the office (id. ¶ 29). Ms. Erlandson concluded that Grastorf misreported her time (id. ¶ 33), thus Grastorf falsified her time entries (id. ¶ 25).

Plaintiff, however, denies that she misrepresented her work hours during the period of May 1 and 16, 2019 (Docket No. 39, Pl. Statement ¶¶ 29, 32; see id. ¶¶ 26-28, 30-31 (lacks information to admit or deny allegations)).

On June 5, 2019, Ms. Hall and Ms. Erlandson met Grastorf and informed her that they had sufficient evidence of falsified time entries that justified letting Grastorf go (Docket No. 33, Def. Statement ¶ 35; see Docket No. 39, Pl. Statement ¶ 35 (admitting assertion)).

Plaintiff now compares her circumstances to that of two employees (Beardsley and Knapp) where each was allowed to leave during work hours either for family obligations or remote customer service (Docket No. 33, Def. Statement ¶¶ 39, 41, 44, 52). The Bank argues that Beardsley and Knapp worked at different branches than Plaintiff did and performed different duties from her (id. ¶¶ 42-43, 53-55). The Bank contends that Beardsley also gave notice to her supervisor when she needed to leave work early (id. ¶ 45).

The Bank claims that for a two-week period Grastorf's timecards showed her leaving daily at various times of the day (for example leaving at 3 pm and not returning) that is inconsistent with childcare obligations (id. ¶¶ 46-48). The Bank contends that Grastorf also failed to punch out when she left for lunch or for hours at a time (id. ¶¶ 49-50). The Bank distinguishes Knapp's position and departure from Grastorf's because Knapp was business development officer at a different branch, a job that required him to be out of the office (id. ¶¶ 54, 55, 51). Plaintiff says she lacks information to admit the facts surrounding Knapp's duties but contends that bank managers such as her had duties to develop business and maintain customer relations (Docket No. 39, Pl. Statement ¶¶ 54, 55). Plaintiff also states she lacks information about Ms. Beardsley (Docket No. 39, Pl. Statement ¶¶ 43-46).

Grastorf also contends that her absences from the office do not demonstrate that it was not work-related (id. ¶¶ 46, 49-50). Plaintiff denies leaving at 3 pm and not returning (id. ¶ 47). She believes her duties compared favorably with Mr. Knapp's because the Bank did not state all duties as bank manager; Plaintiff claims her duties included fostering customer relationships, business development, community involvement, lead development, and small business outreach (id. ¶ 53). Plaintiff also lacks information about Mr. Knapp's position to respond to the allegations (id. ¶¶ 54-55).

### III.   Discussion

#### A.  Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is

6

summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.

### B. First Cause of Action, Title VII Sex Discrimination

#### 1. Title VII Standards

For her Title VII claim, Plaintiff must identify a protected class (here, women), identify an adverse action, show that she was qualified for the job, and that the job was still being performed to allege a Title VII claim, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see Littlejohn v. City of N.Y., 795 F.3d 297, 307 (2d Cir. 2015); Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). Plaintiff them must allege discrimination either by direct evidence, Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d. 523 (1985) ("TWA"); Teamsters v. United States, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), or (as alleged here, Docket No. 17, Am. Compl., First Cause of Action, ¶¶ 29-36) by inference from the burden shifting analysis from McDonnell Douglas, supra, 411 U.S. at 802-04, and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (sex discrimination).

Under McDonnell Douglas and Burdine, Plaintiff bears the burden of demonstrating that sex was a motivating factor in her adverse employment action, McDonnell Douglas, supra, 411 U.S. at 802-04; Burdine, supra, 450 U.S. at 252-56. Under that standard, Plaintiff bears the burden of establishing a prima facie case of discrimination, Burdine, supra, 450 U.S. at 252-54, by a preponderance of the evidence, id. at 252-53. "The burden of establishing a prima facie case of disparate treatment is not onerous," id. at 253, basically that Plaintiff is employed in a job she was qualified for but was rejected or otherwise hindered under circumstances that give rise to an inference of

unlawful discrimination, id.  The prima facie case creates a presumption of unlawful discrimination by the Defendant employer, id.

If Plaintiff meets this initial burden, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its action, id. at 254-56.  If that has been met, the burden shifts back to Plaintiff to show, beyond the prima facie case, that Defendant's determination was the result of discrimination, id. at 256; see McDonnell Douglas, supra, 411 U.S. at 804-05.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," Burdine, supra, 450 U.S. at 253.  As noted by the Burdine Court, the McDonnell Douglas evidentiary burden shifting "serves to bring the litigants and the court expeditiously and fairly to this ultimate question," id., or as later held in the TWA case, "that the 'plaintiff [has] his [or her] day in court despite the unavailability of direct evidence,'" TWA, supra, 469 U.S. at 121 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)) (alterations added).

Plaintiff alleges two other employees were comparable to her in leaving work.

> "Absent direct evidence demonstrating discriminatory intent, '[a] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but "must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self."'  Kosack v. Entergy Enters., Inc., No. 14-CV-9605, 2019 WL 330870, *6–7 (S.D.N.Y. Jan. 25, 2019) (quoting Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)); see also Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (holding that to establish disparate treatment, a plaintiff must allege that "[he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self" (citation omitted)).

Novick v. Village of Wappingers Falls, N.Y., 376 F. Supp. 3d 318, 342 (S.D.N.Y. 2019). To be similarly situated, the coworkers need to be similar in all material respects to the

claimant, id.; Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997).  "All material respects" here means sowing "that similarly situated employees who went undisciplined engaged in comparable conduct," Graham v. Long Is. R.R., 230 F.3d 34, 40 (2d Cir. 2000), that the employees are subject to same workplace standard and "a reasonably close resemblance of facts and circumstances," id.

2. Parties' Contentions

The Bank argues that Plaintiff falsified her time entries and was terminated for that cause (Docket No. 33, Def. Memo. at 3-6).  The Bank next distinguishes the comparator employees Plaintiff cites in her Amended Complaint (id. at 6-7).

Grastorf's gender discrimination claim fails as a matter of law, the Bank contends, because Plaintiff has not shown evidence of discriminatory intent (id. at 9-14).  The Bank claims that Plaintiff was terminated for legitimate, nondiscriminatory reasons, because she falsified her time records (id. at 15).  Further, the Bank argues that Plaintiff cannot demonstrate pretext (id.).

Plaintiff responds that the reason for her termination is a question of fact that should preclude summary judgment for the Bank (Docket No. 39, Pl. Memo. at 5).  She contends that the Bank distorted the facts of her alleged falsification "to mask their egregious and discriminatory actions would be false justice" (id.).

Plaintiff claims that she can demonstrate Defendant's real motivation in her termination was unlawful age or gender discrimination (id. at 10), contending that Defendant is making conclusory assertions of her falsifying time records.  Plaintiff further contends that Ms. Hall promulgated a falsehood that Grastorf falsified her time entries and convinced Ms. Erlandson of her concerns (id. at 12).  She states that her behavior

was the same as "216 other branch managers or other similarly situated employees" (id. at 13), but Plaintiff has not presented other examples from these managers or employees beyond Ms. Beardsley or Mr. Knapp (both of whom were not managers).

The Bank responds that Plaintiff has not submitted any evidence in admissible form to refute the facts alleged in Ms. Erlander and Ms. Hall Declarations (Docket No. 40, Def. Reply Memo. at 1, 3-5).

3. Title VII Sex Discrimination Claim

First, Plaintiff has not alleged direct evidence of gender discrimination. Hence, the McDonnell Douglas prima facie case and burden shifting analysis applies.

While Plaintiff is in a protected class for her gender, endured an adverse employment action in her termination, and her qualifications to perform her former job is not questioned, Grastorf has not demonstrated that her termination was under circumstances that rise to an inference of sex discrimination.

Grastorf attempts to assert an inference of discrimination from her comparison of her treatment with that of two employees who were allowed to leave work. She cites Ms. Beardsley as a comparable employee, but a female employee citing another female employee as a comparative belies a gender discrimination claim (see Docket No. 33, Def. Memo. at 10-11). Furthermore, Plaintiff was branch manager while Ms. Beardsley was a retail branch assistant at a different branch (Docket No. 33, Def. Statement ¶ 42), not similarly employed. Grastorf has not alleged Ms. Beardsley had management obligations or work that required leaving the branch to conclude their duties were similar. Ms. Beardsley also regularly notified her supervisor when she left early and Plaintiff allegedly did not adequately notice the Bank when she left.

The other comparator Plaintiff notes is Mr. Knapp.  Again, their circumstances are different.  Mr. Knapp is a business development officer at a different branch, a job that required performance out of the office (Docket No. 33, Def. Statement ¶ 54), an allegation Plaintiff denies having sufficient information to respond to (Docket No. 39, Pl. Statement ¶ 54).  Plaintiff was branch manager and thus expected to be there.  She argues that her job required travel, meeting customers who could not come to the branch (see Docket No. 39, Pl. Statement ¶ 54).  Grastorf, however, does not cite instances when she left the branch to meet with customers or develop business.  Also, Grastorf does not mention Mr. Knapp's managerial duties to make his job similar to that of a branch manager.

Thus, the Bank's treatment of Ms. Beardsley and Mr. Knapp (as compared with how it treated Grastorf) does not give rise to an inference of discrimination.

Plaintiff did not provide her version of her time entries from the Bank's sampling period of May 1-16, 2019.  Accepting that Grastorf may have left to meet with customers outside of the branch, she does not state when these instances occurred or whether the Bank was aware she left the branch for that purpose.  Plaintiff merely makes conclusory statements that her time out of the branch may be authorized and work-related.  Grastorf's conclusory statements that her departures may have been work-related is not sufficient to raise a material issue of fact to preclude summary judgment to Defendant Bank.

The bank's termination of Plaintiff does not suggest an inference of discrimination.  Plaintiff has not shown that she was terminated because of her sex.

Even assuming Plaintiff somehow had established the non-onerous prima facie case of discrimination, the Bank has provided a nondiscriminatory reason for terminating her from the allegation of falsified time records.  That accusation is not connected to an

employee's age or gender. The Bank's officials investigated the falsification charge before terminating Grastorf. Plaintiff here responds by conclusory statements that these allegations were false. These conclusions alone do not show the Bank's reason was mere pretext.

Therefore, Defendant's Motion for Summary Judgment (Docket No. 33) dismissing the First Cause of Action's Title VII claim is granted.

### C. Second Cause of Action—Age Discrimination

#### 1. Applicable ADEA Standards

To state a prima facie case for age discrimination, Plaintiff must demonstrate she is in a protected age group (alleging here that she was over 40); that she qualified for her position; that she was subject to an adverse employment action; and that the adverse action occurred under circumstances that give rise to an inference of discrimination, Zurich Am. Life Ins. Co. v. Nagel, No. 20-CV-11091 (JSR), 2022 WL 759375, at *20 (S.D.N.Y. Mar. 12, 2022) (citing Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003)) (Docket No. 33, Def. Memo. at 16). If met, the burden shifts to the Bank to proffer a legitimate, nondiscriminatory reason for the employment action, McDonnell Douglas, supra, 411 U.S. at 802. Where the Bank does so, the burden shifts back to Plaintiff to show that this stated reason is pretext to actual age discrimination, see id.; e.g., Granica v. Town of Hamburg, 237 F. Supp. 3d 60, 75 (W.D.N.Y. 2017) (Skrenty, J.).

Thus, the prima facie standards for Title VII and ADEA are similar, e.g., McGuire-Welch v. House of the Good Shepherd, 219 F. Supp. 3d 330, 338 (N.D.N.Y. 2016). New York State Human Rights Law also has the same burden of proof and burden shifting from McDonnell Douglas stated above for Title VII claims, Cruz v. Coach Stores, Inc.,

202 F.3d 560, 565 n.1 (2d Cir. 2000) (Sotomayor, J.); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 310, 786 N.Y.S.2d 382, 394 (2004); see also Banks v. General Motors LLC, No. 14CV970, 2020 WL 6827707, at *9 (W.D.N.Y. Nov. 20, 2020) (Skretny, J.).

### 2. Parties' Contentions, Age Discrimination

As for Plaintiff's age discrimination claim, the Bank asserts that this claim fails as a matter of law and on the facts (Docket No. 33, Def. Memo. at 16-18).  The Bank argues the comparator Plaintiff relies upon for her age discrimination claim is distinguishable because the younger Ms. Beardsley performed different duties than Grastorf and Ms. Beardsley properly notified her supervisor when she departed for personal reasons (id. at 16-17).

### 3. Federal Age Discrimination Claim

For the same reasons stated for Plaintiff's Title VII claim, Grastorf fails to allege an age discrimination claim.  First, Grastorf does not allege direct evidence of age discrimination, so she needs to establish a prima facie case.  Second, while she alleges membership in the suspect age classification and her qualifications for her position, Plaintiff uses Ms. Beardsley (alleged to be younger than 40 years old) as a comparator for an inference of age discrimination.  Again, the circumstances between Plaintiff and Ms. Beardsley differ in that Ms. Beardsley sought excused leave and Plaintiff did not and Ms. Beardsley had different duties than Grastorf.

Even if Plaintiff somehow makes her prima facie case, the Bank has a nondiscriminatory reason for Grastorf's discharge—the alleged falsified time records—and Plaintiff's mere refutation of the accuracy of that allegation does not show it to be pretextual.

The Bank further states that Plaintiff's replacement as branch manager was a 55-year-old woman, a person older than Grastorf when she was terminated (Docket No. 33, Def. Memo. at 18; Hall Decl. ¶ 21). This belies any motive of age-based animus on the Bank's part in terminating Grastorf.

Therefore, Defendant's Motion for Summary Judgment (Docket No. 33) dismissing her ADEA claim is granted.

### D. Supplemental Jurisdiction and New York State Human Rights Law Claims

#### 1. Supplemental Jurisdiction Standards

Plaintiff alleged her parallel State Human Right Law sex and age discrimination claims with her Title VII and ADEA claims without alleging them in distinct Causes of Action. This Court has jurisdiction over these state law claims only upon exercising supplemental jurisdiction under 28 U.S.C. § 1367. The parties have not addressed whether this Court should exercise this supplemental jurisdiction over these state law claims.

Subject matter jurisdiction over these state law claims may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014). This Court must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case"); see 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, Federal Practice and Procedure § 3567.3, at 412 (Jurisd. rev. 3rd ed. 2008).

Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998), or may decline to hear these supplemental state law claims, 13D Federal Practice and Procedure, supra, § 3567.3, at 397.  Under § 1367(c), this Court "may decline to exercise supplemental jurisdiction over a claim" if all original jurisdiction claims were dismissed, 28 U.S.C. § 1367(c)(3); see 13D Federal Practice and Procedure, supra, § 3567.3, at 400, 428-29.  Alternatively, this Court has the discretion to exercise supplemental jurisdiction even after dismissal of all original federal jurisdiction claims, 13D Federal Practice and Procedure, supra, § 3567.3, at 432.

2. New York State Human Rights Law

The standards for the New York Human Rights Law claims are the same as the standards for Title VII and ADEA claims, e.g., Murray v. Williamsville Cent. Sch. Dist., 535 F. Supp. 3d 164, 171-72 (W.D.N.Y. 2021) (Skrenty, J.) (citing Ferrante v. American Lung Ass'n, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 28-29 (1997) (age discrimination); Malinowski v. New York State Div. of Human Rights on Complaint of Malinowski, 58 Misc.3d 926, 929-30, 67 N.Y.S.3d 382, 385 (Sup. Ct. Albany Cnty. 2016) (sex discrimination)).

3. Exercise of Supplemental Jurisdiction

With the identical standards for the New York State Human Rights Law claims and Title VII and ADEA claims (alleged jointly in the First and Second Causes of Action) and the dismissal above of Grastorf's federal discrimination claims alleged therein, this Court exercises supplemental jurisdiction over these analogous state law claims, cf.

28 U.S.C. § 1367(c)(3).  These state law discrimination claims fail on the same grounds for dismissal of her Title VII and ADEA claims.

## IV.   Conclusion

Diane Grastorf fails to establish that Community Bank fired her because of her sex or age after the Bank found discrepancies in her departure times.  Her federal age and sex discrimination claims fail.  Therefore, Defendant Community Bank's Motion for Summary Judgment (Docket No. 33) dismissing the federal claims alleged in the First and Second Causes of Action is granted.

Exercising supplemental jurisdiction over Plaintiff's parallel New York State Human Rights Law discrimination claims, these claims (and this case) are dismissed.

## V.   Orders

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 33) dismissing the federal claims alleged in the Amended Complaint (Docket No. 17) is GRANTED.

FURTHER, that this Court exercises supplemental jurisdiction over Plaintiff's New York State Human Rights Law claims and these claims are DISMISSED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:       February 28, 2023
             Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge